UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KATHY A. QUINTANA,

                                   Plaintiff,

                                                              Case # 15-CV-835-FPG

v.

                                                              DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,
                                   Defendant.



        Kathy A. Quintana ("Quintana" or "Plaintiff") brings this action pursuant to the Social

Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of

Social Security ("the Commissioner") that denied her application for disability insurance benefits

("DIB") under Title II of the Act.  ECF No. 1.  This Court has jurisdiction over this action under

42 U.S.C. § 405(g).

        Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c).  ECF Nos. 8, 9.  For the reasons that follow, the Commissioner's motion is

GRANTED and Plaintiff's motion is DENIED.

                                    **BACKGROUND**

        On March 27, 2012, Quintana applied for DIB with the Social Security Administration

("the SSA").  Tr.[2] 47-54.  She alleged that she had been disabled since August 3, 2010, due to

chronic fatigue syndrome, migraines, and vision problems.  Tr. 48.  After her application was

denied at the initial administrative level, a hearing was held before Administrative Law Judge

William M. Weir ("the ALJ") on June 7, 2013, in which the ALJ considered Quintana's

application *de novo*.  Tr. 55-102.  Quintana appeared at the hearing with her attorney and

---

[1]      Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for
Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]      References to "Tr." are to the administrative record in this matter.

testified.  *Id.*  On June 4, 2014, the ALJ issued a decision finding that Quintana was not disabled within the meaning of the Act.  Tr. 30-39.  On July 22, 2015, that decision became the Commissioner's final decision when the Appeals Council denied Quintana's request for review. Tr. 1-7.  Thereafter, Quintana filed this action seeking review of the Commissioner's final decision.  ECF No. 1.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted).  It is not this Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.      Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial

gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.       The ALJ's Decision**

The ALJ's decision analyzed Quintana's claim for benefits under the process described above.  At step one, the ALJ found that Quintana had not engaged in substantial gainful activity since the alleged onset date.  Tr. 32-33.  At step two, the ALJ found that Quintana has fatigue with eyestrain, which constitutes a severe impairment.  Tr. 33.  At step three, the ALJ found that her impairment did not meet or medically equal an impairment in the Listings.  Tr. 33.

Next, the ALJ determined that Quintana retained the RFC to perform a full range of work at all exertional levels, but she cannot perform work that requires fine visual acuity, like assembling small parts or reading small print.  Tr. 33-38.  At step four, the ALJ found that this RFC prevents Quintana from performing her past relevant work as a graphic artist.  Tr. 38.  At step five, the ALJ relied on section 204.00 of the Medical-Vocational Guidelines (the "Grids") and found that Quintana can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience.  Tr. 39.  Accordingly, the ALJ concluded that Quintana was not "disabled" under the Act.  *Id.*

**II.      Analysis**

Quintana argues that remand is required because (1) the RFC is not supported by substantial evidence; (2) the ALJ's credibility assessment was improper; and (3) the ALJ erred at step five when he failed to obtain vocational expert testimony.  ECF No. 8-1, at 17-24.  These arguments are addressed in turn below.

**A.       RFC**

RFC is defined as "what an individual can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012)

(quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)).  To determine a claimant's RFC "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Desmond*, 2012 WL 6648625, at *5 (citing 20 C.F.R. § 404.1545(a)).  "An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations." *Id.* (citation omitted).

Quintana argues that the RFC is not supported by substantial evidence because it does not account for all of her nonexertional limitations.  ECF No. 8-1, at 17-20.  Specifically, Quintana contends that the RFC should include nonexertional limitations related to her chronic fatigue and weakness.  *Id.*  Quintana asserts that fatigue would limit her ability to work because "there would be many days she could not attend work at all, or that she would be limited to two activities in 20-minute increments." *Id.* at 18.

The ALJ found that Quintana could perform work at all exertional levels but must avoid work "requiring fine visual acuity."  Tr. 33.  Most significantly, this RFC determination is directly supported by the medical source statement of consultative examiner Donna Miller, D.O. ("Dr. Miller").  Tr. 35, 329-32.  After a physical examination, Dr. Miller diagnosed Quintana with chronic fatigue syndrome, visual disturbances, and hypothyroidism.  Tr. 331.  She opined that Quintana "had no significant physical limitations," but that she should "avoid[] repetitive work involving fine visual acuity."  Tr. 332.  The ALJ gave Dr. Miller's opinion "significant weight" because it was consistent with the normal findings noted during the examination and with the normal findings of Quintana's treating neurologist and treating holistic medicine specialist.  Tr. 37-38 (citing Tr. 273-86, 356-71).  These are both valid reasons for affording "significant weight" to Dr. Miller's opinion.  20 C.F.R. §§ 404.1527(c)(3) ("The more a medical

source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."), 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Moreover, "[i]t is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence." *Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) (citations omitted); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

The ALJ also cited treatment notes from Quintana's other medical providers, which support the RFC determination that she must avoid work requiring fine visual acuity. In June of 2009, for example, her primary care physician assessed "visual disturbances" (Tr. 35-36 (citing Tr. 217)), and in November of 2009 an ear, nose, and throat specialist assessed "ocular pain" (Tr. 36 (citing Tr. 230)). In January of 2013, Quintana's current treating physician, Ronald Santasiero, M.D. ("Dr. Santasiero"), noted that she has "a chronic fatigue type syndrome with the only variant being she has a lot of eye symptoms." Tr. 37 (citing Tr. 357).

Although the ALJ's RFC determination is consistent with this part of Dr. Santasiero's treatment notes, Quintana argues that the ALJ should not have rejected Dr. Santasiero's opinion that she was disabled. ECF No. 8-1, at 19. Specifically, Dr. Santasiero opined that Quintana should "apply for . . . disability since she is certainly disabled and has gone two years without working." Tr. 294. Notably, Dr. Santasiero did not provide any other opinion related to Quintana's ability to perform work related functions.

The treating physician rule requires the ALJ to give controlling weight to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record," 20 C.F.R. § 404.1527(c)(2); however, the ALJ may discount a treating physician's opinion for several reasons as long as he or she explains those reasons. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Here, the ALJ gave Dr. Santasiero's opinion "little to no weight" because Dr. Santasiero "did not state a medically determinable impairment to justify [Quintana]'s 'disability,' but he merely concluded that she is disabled and has been so for two years." Tr. 38 (citing Tr. 293). This was a proper reason to discount the opinion, because the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and a medical source's statement that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will find that claimant disabled. 20 C.F.R. § 404.1527(d)(1). Moreover, the ALJ pointed out that Dr. Santasiero's opinion was not well-supported, *see* 20 C.F.R. § 404.1527(c)(3), because his "most recent progress notes document that he is not even sure of a diagnosis" and that Quintana's "physical examination was again normal on that occasion." Tr. 38 (citing Tr. 294).

The ALJ provided further support for his RFC determination by noting that Quintana's "physical examinations and diagnostic testing revealed essentially normal findings." Tr. 35-36; *see, e.g.*, Tr. 280 (normal electromyography and sleep study results), 283 (normal neurological examination), 285 ("completely normal" neurological examination), 320 (normal neurologic evaluation, electrocardiogram stress test, and spirometry test). Although Quintana cites several

treatment notes that indicate she experiences fatigue (EFC No. 8-1, at 18-19), none of these records demonstrate that fatigue imposes significant restrictions on her ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  In fact, as the ALJ pointed out in his decision, many of these treatment notes merely offer "non-definitive diagnoses."  Tr. 35-36; *see, e.g.*, Tr. 228 (noting that Quintana's "symptoms are vague and they come and go" and that she "has seen many specialist doctors without a definitive diagnosis"), 283 (doctor noted that Quintana "has a chronic fatigue syndrome or possibly fibromyalgia, but she does not have nearly as much muscle pain as is typical for fibromyalgia").

Accordingly, for all the reasons stated, the Court finds that the ALJ did not err and that the RFC determination is supported by substantial evidence.

**B.     Credibility**

Quintana also argues that the ALJ's credibility assessment was improper.  ECF No. 8-1, at 20-23.  Specifically, Quintana argues that the ALJ erred because he indicated at the hearing that he found her credible but then found her "not entirely credible" in his decision.  *Id.*

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at \*7 (N.D.N.Y. Nov. 10, 2009) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)).  "[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if the finding is supported by substantial evidence.  *Id.* (internal quotation marks and citation omitted).  "It is the function of the Commissioner, not the reviewing court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses, including the

claimant.'" *Id.* (quoting *Caroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

The ALJ must follow a two-step process when considering a claimant's alleged symptoms and their effect on his or her ability to work. 20 C.F.R. § 404.1529. First, the ALJ must consider whether the medical evidence shows any impairment that "could reasonably be expected to produce the pain or other symptoms alleged[.]" 20 C.F.R. § 404.1529(a); SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). Second, if such an impairment is shown, the ALJ must evaluate the "intensity, persistence, or functionally limiting effects" of a claimant's symptoms to determine the extent to which they limit his or her capacity to work. 20 C.F.R. § 404.1529(b); SSR 96-7p, 1996 WL 374186, at *2.

When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements by analyzing the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures the claimant has taken to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii); SSR 96-7p, 1996 WL 374186, at *2.

Here, the ALJ's decision included boilerplate language indicating that he found that Quintana's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 35. Interestingly, the ALJ later noted

that he found Quintana to be a "credible witness," but that "the objective medical evidence simply does not document a medically determinable impairment that accounts for her alleged limitations." Tr. 37. As explained in the SSA's rulings, "[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." S.S.R. 96-7p,1996 WL 374186, at *1.

Nonetheless, the ALJ praised Quintana's good work history and noted that her testimony was consistent with the medical record. *Id.* Despite these factors that weighed in Quintana's favor, the ALJ pointed out that her doctors could not provide a definitive diagnosis, she was encouraged to exercise, and her test results and physical examinations were normal. *Id.* (citing Tr. 283, 357). It was proper for the ALJ to consider the objective medical evidence in assessing Quintana's credibility because it "is a useful indicator to assist [the ALJ] in making reasonable conclusions about the intensity and persistence of [the claimant's] symptoms and the effect those symptoms, such as pain, may have on [his or her] ability to work." 20 C.F.R. § 404.1529(c)(2); S.S.R. 96-7p, 1996 WL 374186, at *6.

The ALJ also considered Quintana's daily activities "such as driving, light housework and shopping," which he found "inconsistent with allegations of disabling symptoms and functional limitations." Tr. 37. Although the claimant "need not be an invalid" to be disabled under the Social Security Act, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted), the ALJ may properly consider the claimant's daily activities when assessing his or her credibility. 20 C.F.R. § 404.1529(c)(3)(i). Moreover, as discussed above, the ALJ did not use Quintana's daily activities as the sole reason to discount her credibility.

Accordingly, for the reasons stated, the Court finds that the ALJ did not err and that the credibility assessment is supported by substantial evidence.

### C.    Step Five

Finally, Quintana argues that, because the ALJ should have found that she had additional nonexertional limitations, as discussed above, he erred by not obtaining vocational expert testimony at step five to determine the effect that those additional nonexertional limitations would have on her ability to work.  Tr. 23.

At step five, the ALJ must consider the claimant's RFC and his or her age, education, and work experience to determine whether the claimant can adjust to other work for which there are a significant number of jobs in the national economy.  20 C.F.R. § 404.1560(c).  At this step, it is the Commissioner's burden to prove that the claimant can transition to other work.  *Baron v. Astrue*, No. 08-CV-3303 (CBA), 2010 WL 563069, at \*5 (E.D.N.Y. Feb. 17, 2010).  "In satisfying this burden, the Commissioner must produce evidence to show alternative employment that exists in significant numbers in the national economy."  *Id.* (citation omitted).

One way an ALJ can make his or her step five determination is by relying on the Grids, which are a set of rules that indicate either "disabled" or "not disabled" based on a claimant's age, education, and work history for each given level of exertion.[3]  *See* 20 C.F.R. Part 404, Subpart P, App'x 2.  If the Grids adequately reflect the claimant's condition, then the ALJ may rely on them at step five to determine whether he or she is disabled.  *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986).

As discussed above, the Court finds that the RFC determination is supported by substantial evidence and that Quintana does not have additional nonexertional limitations.  In his

---

[3]    Jobs are separated into five categories based on their physical exertion requirements: sedentary, light, medium, heavy, or very heavy.  20 C.F.R. § 404.1567.

decision, the ALJ noted at step five that Quintana's ability to perform work at all exertional levels had been compromised by nonexertional limitations. Tr. 39. He correctly explained, however, that it was appropriate to use the Grids because those limitations "have little to no effect on the occupational base of unskilled work at all exertional levels." *Id.* The ALJ noted that, despite her limitations, Quintana can read normal print with glasses and has normal depth perception. *Id.* He explained that "Social Security Ruling 85-15 states that as long as an individual retains sufficient visual acuity to be able to handle and work with rather large objects and has the visual fields to avoid ordinary hazards in a workplace, there would be a substantial number of jobs remaining across all exertional levels." *Id.*; *see* S.S.R. 85-15, 1985 WL 56857, at *8 (S.S.A. Jan. 1, 1985). Because Quintana retained those abilities, the ALJ was entitled to conclude that a finding of "not disabled" was appropriate under the Grids. Tr. 39. Accordingly, the Court finds that the ALJ did not err when he relied on the Grids at step five because they adequately reflected Quintana's condition.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 7, 2017
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court